IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHESTER O'QUINN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CIVIL NO. 10-917-GPM ) |
| ADRIAN FEINERMAN, FE FUENTES, KIMBERLY CRISS, MAGID FAHIM, and SAMUEL NWAOBASI, | ) ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Before the Court is Defendants' motion for summary judgment (Doc. 83). The motion is **GRANTED** and this matter dismissed on the merits.

Plaintiff Chester O'Quinn, an inmate in the Menard Correctional Center, filed a Complaint in this matter on November 15, 2010, alleging that Defendants violated his constitutional rights by failing to adequately treat and monitor his diabetes and keloids, cysts, and boils (Doc. 1). On April 20, 2012, Plaintiff filed a First Amended Complaint against Defendants (Doc. 77). Plaintiff stated that he had been diagnosed with diabetes prior to incarceration. Plaintiff alleged that, as a result of Defendants' sporadic and unreliable monitoring, he suffered pain and other symptoms of uncontrolled diabetes. Plaintiff also stated that he had developed cysts, boils, and keloids on his body prior to incarceration. Plaintiff alleged that, as a result of Defendants' failure to treat or monitor these abrasions, he experienced significant pain and suffering.

In their pending motion, Defendants argue they are entitled to summary judgment because

Plaintiff failed to demonstrate that they acted with deliberate indifference to his serious medical needs; specifically that Plaintiff's diabetic monitoring, keloids, cysts, and boils did not amount to serious medical needs; they provided appropriate medical care in relation to these medical needs; and Plaintiff failed to establish that any Defendant was deliberately indifferent to his medical needs. Thus, Defendants argue, Plaintiff has failed to show that they were deliberately indifferent to Plaintiff's serious medical needs.

In response, Plaintiff argues that Defendants did act with deliberate indifference and that diabetes is a serious medical need. Plaintiff asserts that Defendants' sporadic monitoring of his diabetes fell short of standards set forth in the Illinois Department of Corrections ("IDOC") guidelines. In regards to his keloids, cysts, and boils, Plaintiff points to the great pain these abrasions caused him. Plaintiff asserts that Defendants did not provide adequate pain treatment.

**Factual Background**

A. Diabetic Monitoring

Prior to his incarceration, Plaintiff was diagnosed with Type II diabetes (Chester O'Quinn Deposition, p. 2 (Doc. 84-6)). Since incarceration, Plaintiff has always been prescribed and taken Metformin for his diabetes (O'Quinn Dep., p. 3). Metformin is an oral medication commonly used to treat Type II diabetes (Magid Fahim Deposition, p. 6 (Doc. 84-2); Adrian Feinerman Deposition, pp. 7-8 (Doc. 98)). IDOC standards state that inmates with Type II diabetes are to be examined at least three times a year (Office of Health Services Chronic Illness Treatment Guideline, Diabetes, p. 4 (Doc. 98-74)). Plaintiff underwent blood-testing to measure his blood sugar on June 3, 2008; July 29, 2009; June 11, 2010; August 8, 2011; and September 19, 2011. (University of Illinois Medical Center Reference Laboratory Results, pp. 1-5 (Doc. 84-8)).

On January 13, 2009, Dr. Fuentes ordered Plaintiff to have daily Accu-Check for two weeks (Offender Outpatient Progress Notes, p. 8 (Doc. 84-9)). On February 27, 2009, Dr. Fuentes ordered additional daily Accu-Check for two weeks (Fe Fuentes Deposition, p. 5 (Doc. 84-3). On March 11, 2009, Dr. Fuentes increased Plaintiff's Metformin dosage as a result of the Accu-Check readings (Fuentes Dep., p. 5). On June 7, 2010, Dr. Fahim treated Plaintiff over complaints of a cold. Dr. Fahim learned that Plaintiff was diabetic and ordered weekly Accu-Check for a year (Fahim Dep., p. 7).

B. Treatment of Keloids, Cysts, and Boils

Prior to his incarceration, Plaintiff had a history of keloids and cysts on his body (Doc. 77). Keloids, an excess growth of scar tissue, do not proliferate if left untreated (Fahim Dep., p. 3; Feinerman Dep., pp. 8-9). Because keloids often enlarge after attempts of surgical removal, surgical treatment is not universally advised (Fahim Dep., p. 3; Samuel Nwaobasi Deposition, p. 4 (Doc. 84-4); Fahim Dep., p. 3; Kimberly Criss, Deposition, p. 4 (Doc. 84-5)). Keloids do not ooze puss or bleed unless they are infected or cut (Feinerman Dep., p.8-9; Fahim, Dep., p. 4). Even if untreated, keloids are not pre-cancerous (Nwaobasi Dep., p. 9.).

On July 21, 2009, Dr. Fuentes noted multiple keloids on Plaintiff's body and advised Against removal. (Offender Outpatient Progress Notes dated July 21, 2009, p. 9 (Doc. 84-9)). On January 29, 2010, Plaintiff visited Nurse Practitioner Criss complaining of keloid drainage, though the keloids were not draining at the time of his visit. Nurse Practitioner Criss ordered a ten-day antibiotic for treatment. (Offender Outpatient Progress Notes dated January 29, 2010, p. 7 (Doc. 84-10)). She also renewed Plaintiff's hypertension and diabetes medications, and ordered a diabetes clinic visit (Criss Dep., p. 8; Offender Outpatient Progress Notes dated January 29, 2010,

p. 7 (Doc. 84-10)). On May 20, 2010, Dr. Nwaobasi identified keloids on Plaintiff's body and informed Plaintiff that they were not cancerous (Nwaobasi, Dep., pp. 5-6). Plaintiff complained that the keloids had been oozing and bleeding. The keloids were not oozing or bleeding at this time, nor did Plaintiff's shirt have blood or puss on it at the time of the visit (Nwaobasi, Dep., pp. 11-12). Nwaobasi prescribed Plaintiff medication to treat pain and itching (Nwaobasi, Dep., p. 10).

20.

On March 1, 2011, Dr. Fuentes diagnosed Plaintiff with a cyst on his body and ordered Bactrim, an antibiotic, to treat (Offender Outpatient Progress Notes dated March 1, 2011, p. 2 (Doc. 84-10); Fuentes Dep., p. 6). On March 7, 2011, Dr. Nwaobasi found that the cyst was resolving with the antibiotic (Offender Outpatient Progress Notes dated March 7, 2011, p. 3 (Doc. 84-10)).

On April 11, 2011, Plaintiff again complained to Dr. Fahim of keloids (Offender Outpatient Progress Notes dated April 11, 2011, p. 6 (Doc. 84-9)). Finding no discharge or areas of redness on the keloids, Dr. Fahim prescribed antibiotics for the keloids (Fahim, Dep., p. 8 (Doc. 84-2)).

On June 3, 2011, Dr. Nwaobasi identified an infected cyst on Plaintiff's body and prescribed antibiotics (Offender Outpatient Progress Notes, p. 4 (Doc. 84-10)). On July 15, 2011, Dr. Nwaobasi conducted a follow-up examination, found that the cyst had healed significantly, and prescribed additional antibiotics (Offender Outpatient Progress Notes dated June 3, 2011, p. 5 (Doc. 84-10)).

**Standards**

The standard applied to summary judgment motions filed under Rule 56 is well-settled and

has been succinctly stated as follows.

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. The evidence must create more than some metaphysical doubt as to the material facts. A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (internal citations and quotations omitted). "We often call summary judgment, the 'put up or shut up' moment in litigation, by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case. And by evidence, we mean evidence on which a reasonable jury could rely." *Goodman v. National Security Agency, Inc.,* 621 F.3d 651, 654 (7th Cir.2010).

To prevail on a claim of deliberate indifference to a serious medical need, Plaintiff must first show that his condition was "objectively, sufficiently serious" and that the prison official acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), *quoting Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645,

652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Prison officials are not liable under the Eight Amendment's "cruel and unusual punishments" clause unless the official "knows of and disregards" a risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To amount to deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A prison official's "failure to alleviate a significant risk, that he should have perceived but did not, while no cause of commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010), *quoting* Farmer, 511 U.S. at 843).

**Discussion**

Plaintiff claims that the serious medical need here is the diabetes itself (Memorandum in Opposition, pp. 14-15). Defendants, on the other hand, contend that diabetes is a serious medical need but this case is about merely diabetes monitoring, which Defendants claim does not amount to a serious medical need (Memorandum in Support, p. 24). This disagreement need not be resolved, however, as the second prong of the analysis is determinative—there is no deliberate indifference here.

Plaintiff claims that his diabetes was not monitored with sufficient regularity by Defendants Feinerman, Fahim, and Criss. The facts prove otherwise. Plaintiff received medical care for his diabetes, including physician examinations, blood glucose tests, and medication. The

undisputed medical records indicate that Plaintiff's blood sugar levels were examined annually by the accused Defendants. Plaintiff was seen by Defendants at least once a year, as is the standard of care for diabetics who are not imprisoned (Fahim Dep., p. 4). "A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Defendants were therefore entitled to make decisions contrary to IDOC guidelines unless no minimally competent professional would have responded similarly. Given the significant discretion afforded prison medical professionals, Defendants' care for Plaintiff certainly did not rise to deliberate indifference. The undisputed medical records indicate that Defendants dedicated time and effort to monitor Plaintiff's diabetes. Moreover, Plaintiff has failed to present any evidence indicating that he suffered as a result of Defendants' allegedly inadequate monitoring There seems to be no legitimate argument here for even negligent care, and there is certainly no knowing, profound disregard of Plaintiff's care so as to implicate the Eighth Amendment.

Regarding Plaintiff's keloids, cysts and boils, his claim also fails to state deliberate indifference. The undisputed medical records indicate that Plaintiff saw Defendants eight times in relation to his keloids, cysts, and boils from July, 2009 to July, 2011. Only twice was Plaintiff not-prescribed medication for these abrasions. On July 21, 2009, Dr. Fuentes advised that they not be removed and ordered no further treatment at that time. During that visit, Plaintiff did not complainof the keloids. Rather, during an inspection, Dr. Fuentes recognized the keloids and recommended that they not be surgically removed, as is advised in the medical field. On March 7, 2011, Dr. Nwaobasi examined one of Plaintiff's cysts in a follow-up visit and, finding that previously ordered antibiotics had significantly treated the cyst, ordered no further antibiotics. Dr.

Nwaobasi did, however, instruct Plaintiff to take Vitamin C and Tylenol for any pain. Each of the four Defendants who had treated Plaintiff in relation to his keloids, cysts or boils had prescribed him medication on at least one occasion.

Plaintiff does cite facts in the record in an attempt to raise genuine issues of material fact. First, Plaintiff claims that, on July 21, 2009, Dr. Fuentes referred him to Dr. Feinerman for further assessment of his keloids, and there is no record indicating Dr. Feinerman ever saw Plaintiff in relation to this request. However, the records also indicate both that Plaintiff did not complain of keloids during his visit with Dr. Fuentes and that he made no complaints about his keloids until January, 2010. Moreover, recognizing the negative effects of surgical removal, Dr. Feinerman's decision to not follow up with Plaintiff on this matter constitutes an appropriate response within his discretion as a medical professional. "The Eighth Amendment does not confer a constitutional right to demand either a particular type of medical treatment or a certain specialist." *Kendrick v. Frank*, 310 Fed. Appx. 34, 38 (7th Cir. 2009), *citing Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997) (explaining that inmates are not entitled to demand either specific care or the best care possible). Plaintiff received evaluation and treatment--the failure to set up one follow-up appointment does not raise a genuine issue of material fact that Defendants acted with deliberate indifference to Plaintiff's serious medical needs.

Plaintiff also claims that when he was seen by Defendant Criss and Dr. Nwaobasi in 2010 and complained of a possibly infected keloid, Plaintiff was not given adequate treatment for his pain. Plaintiff complained of blood and puss, which results from an infected keloid. Neither Defendant found evidence of such symptoms, and yet both still prescribed antibiotics. Defendants examined Plaintiff; they found that the keloids were not infected and posed no serious risk. To rise

to the level of deliberate indifference, a defendant must act with culpability greater than negligence or even gross negligence. *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). *See also Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2002) ("Deliberate indifference entails more than mere negligence . . . and requires the prisoner to show that the prison official was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety from lack of treatment." (citations omitted)). Again, the Constitution does not provide Plaintiff the right to demand specific care. There is no genuine issue of material fact that Defendants acted with deliberate indifference.

Plaintiff's argument that Defendants routinely failed to monitor or treat his keloids, cysts, and boils is likewise unavailing. Even including additional, disputed instances in which Defendants neglected to prescribe treatment—the undisputed evidence establishes that Plaintiff's keloids, cysts, and boils were treated numerous times. In summary, none of the evidence identified by Plaintiff is sufficient to demonstrate the existence of a genuine issue of material fact regarding whether Defendants acted with deliberate indifference to Plaintiff's serious medical needs.

## Conclusion

Defendants' motion for summary judgment (Doc. 83) is **GRANTED**. This action is dismissed on the merits and the action will be closed on the Court's docket.

**IT IS SO ORDERED.**

**DATED**: March 28, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge